UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


<u>Cheryl Bentley</u>

   **v.**                                              Case No. 10-cv-470-PB
                                                              Opinion No. 2012 DNH 200
<u>City of Lebanon, et al.</u>


<u>**MEMORANDUM AND ORDER**</u>


     Cheryl Bentley filed a writ of summons against the City of Lebanon and three City employees in state court.  Defendants removed the case to this court.  Doc. No. 1-2.  Bentley includes state law claims for defamation (Counts I and II); sexual harassment in violation of N.H. Rev. Stat. Ann. § 354-B (Counts III and IV); and intentional and negligent infliction of emotional distress (Counts V and VI).  Reading the complaint generously, she also claims gender discrimination in violation of Title VII and the Fourteenth Amendment's Equal Protection Clause (Counts VII and VIII). [1]

---

[1] Bentley captions Counts VII and VIII "Violation of Equal Protection under the Law: Discrimination due to Gender," but cites only to state law.  Moreover, although Bentley compares N.H. Rev. Stat. Ann. § 354-A:7 to Title VII in Count III of her complaint, she does not explicitly assert a Title VII claim.  Nor does she explicitly state a Fourteenth Amendment claim.  In her objection, she argues the defendants violated Title VII by sexually harassing her.  An objection to a motion to dismiss is not the proper place to raise a claim.  Nonetheless, I treat

Defendants have moved for summary judgment. For the reasons set forth in this Memorandum and Order, I determine that the defendants are entitled to summary judgment with respect to Bentley's federal law claims. I also decline to exercise supplemental jurisdiction over her state law claims and remand what remains of the case to state court.

## I.  BACKGROUND

Cheryl Bentley worked for the United States Department of Agriculture, Animal, Plant and Health Inspection Service, Wildlife Services (the "USDA") as a Wildlife Specialist from sometime in 1997 until April 2, 2008. The USDA had a contract with the City of Lebanon for a bird control and monitoring project to reduce hazards to air traffic associated with gulls using the landfill. Doc. No. 31-3. The USDA assigned Bentley to monitor and control seagulls at the landfill and surrounding restaurants in Lebanon, New Hampshire.[2] Bentley concedes that the Town did not supervise her work on behalf of the USDA.

Bentley's issues at the landfill began in November 2006

---

these invocations of federal law as attempts to assert claims under Title VII and the Equal Protection Clause.

[2] FAA regulations require wildlife hazard assessments and, if necessary, a wildlife hazard management plan when wildlife have access to an airport. 14 C.F.R. § 139.337.

2

when the interim landfill manager, John Daniels, went on vacation and Ed DeNike temporarily filled in for him.  DeNike confronted Bentley in the lunch room and asked her about her pay and questioned whether her job was necessary.  Bentley described this as a "hostile interrogation."  Doc. No. 31-8.

Around January 2007, rumors began to circulate that Bentley and Daniels were having an affair.  Bentley heard about the rumors from landfill employees, including Daniels, Frank Kimball, and Mike Cole.  For example, in February 2007, Bentley learned of a rumor that Daniels' domestic partner walked into their house and found Bentley and Daniels kissing on the couch.[3]  Shortly after, Kimball apologized to Bentley for spreading rumors about her and Daniels.  In early September, a rumor circulated that Daniels put Bentley's name on his mailbox.  Bentley believes Kimball started this rumor.

On September 5, 2007, USDA director John McConnell, who was also Bentley's supervisor, learned that the landfill manager, Mark Morgan, was dissatisfied with Bentley's performance and wanted her to be replaced.  Prior to September 2007, Bentley had received "fully successful" ratings on performance reviews from her supervisor at USDA.  Docs. No. 34-9, 10, 11.

---

[3] Between 1999 and 2004 Daniels was in a relationship with Tara Kimball, Frank Kimball's daughter.  They lived together and had a child together.  Doc. No. 31-6.

3

On September 6, 2007, McConnell told Bentley that the USDA was not going to renew her contract because she was negatively impacting the morale at the landfill and her job performance was unsatisfactory. She was replaced with a younger and less experienced male employee. There is no evidence in the record, however, that any of the defendants in this action played any role in the hiring of Bentley's replacement.

## II. STANDARD OF REVIEW

Summary judgment is appropriate when the record reveals "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must consider the evidence submitted in support of the motion in the light most favorable to the nonmoving party, drawing all reasonable inferences in its favor. See Navarro v. Pfizer Corp., 261 F.3d 90, 94 (1st Cir. 2001).

A party seeking summary judgment must first identify the absence of any genuine dispute of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A material fact "is one 'that might affect the outcome of the suit under the governing law.'" United States v. One Parcel of Real Prop. with Bldgs., 960 F.2d 200, 204 (1st Cir. 1992) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). If the moving party

satisfies this burden, the burden shifts to the nonmoving party to "produce evidence on which a reasonable finder of fact, under the appropriate proof burden, could base a verdict for it; if that party cannot produce such evidence, the motion must be granted."  Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 94 (1st Cir. 1996); see Celotex, 477 U.S. at 323.

### III.  ANALYSIS

If Bentley has a viable federal claim against any of the defendants, it is to be found in Counts VII and VIII.  I analyze the evidence she has provided in support of both counts to determine whether she has a triable claim under either Title VII or the Fourteenth Amendment's Equal Protection Clause.

**A.  Title VII**

To the extent the Bentley is seeking to assert Title VII claims in Counts VII and VIII, her claims fail because none of the defendants were her "employers."  Title VII provides a cause of action against employers.  It does not authorize suits against other employees.  Fantini v. Salem State Coll., 557 F.3d 22, 28-29 (1st Cir. 2009).  Nor does it authorize claims against third parties who interfere with an employment relationship.  Lopez v. Massachusetts, 588 F.3d 69, 86-87 (1st Cir. 2009).

Bentley does not allege that any of the individual defendants were her employers.  Further, although an entity such as the City of Lebanon could qualify as a de facto employer in some circumstances even though the plaintiff is nominally employed by a third party, see, e.g., id. at 86-87 (discussing test for a de facto employer claim), Bentley has failed to produce any evidence to support a claim that the City was her de facto employer.  Accordingly, she does not have a triable Title VII claim against any of the defendants.

**B.   Equal Protection**

To establish an equal protection claim for gender discrimination, Bentley must show that defendants intentionally discriminated against her on the basis of her gender.  See Rios-Colon v. Toledo-Davila, 641 F.3d 1, 4 (1st Cir. 2011).  The only conduct Bentley offers as evidence of a constitutional violation is: (1) the hostile work environment that resulted from rumors that she was having an affair with Daniels, and (2) the USDA's refusal to renew her contract because, allegedly, she was negatively impacting employee morale.  This evidence, however, provides no support for Bentley's claim that defendants intentionally discriminated against her because of her gender.  At most, as Bentley describes the situation, she was "harassed" because her coworkers were jealous, not because she is a woman.

Further, even if Morgan intervened with the USDA, as Bentley claims, the evidence suggests that his intervention was caused by perceived workplace problems rather than Bentley's gender.

Construing the evidence in the light most favorable to Bentley, no reasonable jury could conclude that she was discriminated against on the basis of her gender.  Accordingly, defendants are entitled to summary judgment with respect to any claim that they are liable for an equal protection violation.

### C.   Supplemental Jurisdiction

I decline to exercise supplemental jurisdiction over the remaining state-law claims.  28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . .").  I remand the remaining claims to state court.  See City of Chi. v. Int'l Coll. of Surgeons, 522 U.S. 156, 173 (1997).

### IV.   CONCLUSION

Defendants' motions for summary judgment (Doc. Nos. 30, 31) are granted as to Counts VII and VIII.  I deny the motions in all other respects without prejudice and remand the remaining state law claims to state court.

7

SO ORDERED.

                                               /s/Paul Barbadoro
                                               Paul Barbadoro
                                               United States District Judge

December 13, 2012

cc:   Ernest James Ciccotelli, Esq.
      Samantha Dowd Elliott, Esq.
      R. Matthew Cairns, Esq.